Good morning, Comrade Anna. My name is Brad Banas and I represent the appellant Pedro Salmeron-Salmeron. This Court should reverse the District Court's decision for two reasons. First, the District Court attempted to engage in judicial review under the Administrative Procedure Act without a certified administrative record. Second, even if that record can be salvaged from the document dump that the government did in this case, its underlying decision violates its own binding memo and is arbitrary and capricious. I'm a little con… on the problem you have with the record. I don't quite get this. There was some stuff in that record that happened after the decision was made and that was thrown in, but how does that prevent you… prevent the Court from looking at the documents it should have looked at in making its decision? I didn't get where… I didn't see the prejudice. Yes, Your Honor. If the over-inclusion issues here were a handful of documents, the complaint from the habeas I filed or that, I don't think it would be an issue, Your Honor. We'd be able to segregate the stuff that USCIS relied on, based its decision on, and we could go from there. But this is an egregious over-inclusion. The agency points to 10 documents, approximately 30 pages, that it claims its adjudicator relied on. The record… record that they provided here was 3,467 pages. A hundred times larger than what the agency claims it actually… its decision maker actually relied on. And if you look at their brief and where they claim the factual support or the record support, I should say, for their jurisdictional decision, it gets all over the board, Your Honor. It's documents from extensive parts of that record where they claim that only 10 documents the decision maker needed. When it's that egregious, Your Honor, I do think the prejudice is significant. Well, where is it? Where is the prejudice? Mm-hmm. You say it's significant. It doesn't jump off at me. It doesn't jump off the page at me. And the reason I ask the question is there's no suggestion that the administrative record was supplemented with documents that predated the jurisdictional notice but which were not part of the agency decision-making process, right? Your Honor, the agency supplemented the record twice. And what it did essentially was un-redact portions of redacted documents that it originally provided. They filed the record. I filed my motion. Then they go and un-redact two documents separately to provide the evidence to support their claimed rationale for the decision. This is exactly why Camp v. Pitts, Overton Park, the classic administrative law cases in the 70s say that the focal point of judicial review is the administrative record and the administrative record is the documents that the decision-maker actually considered. Right. I guess but the heart of the question is how did that harm you? Let's assume, arguendo, that you were right. The record is full and fat and has more in it than it needs. So what? You're not saying the district court focused on the wrong documents or that he was misled by this fulsome record. Where's the harm? I think the harm is that we don't know what the decision-maker actually relied on. And that constitutes the actual administrative record. If the decision-maker in the asylum office in Virginia did not look at some of these documents or consider them directly or indirectly, they should not be in front of the district court for review. I'm having trouble with this one. Okay. If you have a case where it's one of those cases and we don't know if the place is dangerous or not dangerous, if a person is going to be tortured, not tortured, and a whole bunch of documents and you have to decide. But in this case, the only issue is whether he was 18 or not. Right? Respectfully, no, Your Honor. The decision here is whether an agency, that is, Immigration and Customs Enforcement or Customs and Border Protection, took an affirmative act to terminate Mr. Salmarone's unaccompanied alien child status. That is the agency's expressed rationale in their final agency action here. Well, I thought somebody looked at a document, saw he was 18, he was put in adult detention. None of that's an affirmative act? That's not an affirmative act to terminate his UAC status. And if you look at the statutes that were passed during the TVPRA in 2008, 8 U.S.C. Section 1232, you will see that UAC status remains beyond the age of majority. Congress said in various different protections that once you are assigned the status of an agency in 2013 went in and cabined its own adjudicators and said, look, if one of these other sister agencies has said that this person is an unaccompanied alien child, you don't look behind that unless or until there is an affirmative act terminating asylum or UAC status. It doesn't say if there are facts or acts inconsistent with UAC status. It says an affirmative act terminating that status. It even goes so far as to say adopt that, don't look behind it, even if, even if the documents indicate he's no longer an unaccompanied alien child. That's what their own binding policy says. And they do not dispute that that memo in 2013 is indeed binding on the agency. Under the Administrative Procedure Act, when an agency violates its own binding rules, we have a violation. And that's what happened here. Counsel, you're focusing on the memorandum of the agency, but I'm looking at the initial jurisdiction provision in the statute. It appears that under just straight statutory interpretation that the application needs to be filed while the child is still a child. Is that not the way you read it? Your Honor, I think that we have to defer to what the agency has interpreted their own statute to say. And they have interpreted that statute in that policy memo. This is their binding interpretation. A policy memo can trump a jurisdictional provision in a statute. Well, Your Honor, I think it's not a strictly jurisdictional provision. It's an exclusive jurisdiction. It is saying that if a person is an unaccompanied alien child, then USCIS gets exclusive jurisdiction. Exclusive jurisdiction over any asylum application filed by an unaccompanied alien child. And I think the agency had disparate policy throughout the years. From 2008-4, we have the 2009 memo in the record. And then we have the 2013 memo. So I can see a memo saying we can't figure out how old this child is. And so when we have that situation, this is what we do. But there's no question in this case, he had a passport. The documentation was there. Everyone knew how old he was. It's just a simple question. Why wouldn't the statute apply? Your Honor, I think the statute applies. And I think that the agency's interpretation of that statute, not done through notice and comment rulemaking here, admittedly, done through a policy memo that it does not dispute is binding. They have cabined themselves, which agencies have the jurisdiction to do and the authority to do. They can say, we're going to interpret this statute. Are we bound by the policy statement? Your Honor, I believe the agency. Are we Chevron bound by the policy statement? No, Your Honor. I don't believe so. Let's suppose the policy statement was at war with the four corners of the language in the statute. We'd follow the statute, ignore the policy statement, and reach a conclusion, right? I think that's right under Chevron, Your Honor, yes. Is this policy statement inconsistent with the statute? I don't believe so, Your Honor. Tell me why not. I believe it's they – the statute is somewhat ambiguous. It says you get exclusive jurisdiction if they're an unaccompanied alien child. And what the agency chose to do, it's actually a resources decision, Your Honor. If you read the memo, it says we're not going to spend additional resources on second-guessing our sister agency's decisions when it comes to unaccompanied alien children. And that's exactly what they've done here. They have gone back. They saw that he was a UAC, determined to be a UAC, and they simply went beyond that. And it's unclear what they actually considered. Again, that's our first argument. But when the agency violates its own policy memo, that is a violation of the APA. I fully expected, Your Honor, the government to come in and argue, well, this is just a policy memo. It's not binding on us. And you can see that in my brief trying to predict that argument. That's not the argument they make. How do they violate the policy here? They go beyond the face of the determination of a UAC. There's no affirmative act to terminate. Well, that, of course, is the question. What do you need to do to establish an affirmative act? I think that a sister agency has to at least recognize that the person has been a UAC and that they are no longer a UAC. Here the agency relies solely on Mr. Salmerone being placed in Stewart Detention Facility down in Lumpkin, which is an adult detention center. Again, I would point you to 8 U.S.C. 1232. Unsurprisingly. I want to ask kind of an out-from-left-of-you question just until I understand it. How come he's an unaccompanied minor when his parents are in the United States? So, Your Honor, an unaccompanied alien child is someone who arrives at the border without the presence of a legal guardian or an adult who's under 18. Once he's in the United States and with custody of his parents, that determination has already been made, but that determination is made at the border upon someone arriving. If he didn't have a parent in the United States, he may be able to be classified as a separate immigration status of a special immigrant juvenile, which accords different rights. Okay, he was unaccompanied at the border. That's right. But he has parents with respect to whom there is no legal parent or guardian in the United States. But he had parents in the United States. But— Your Honor, it's— So I didn't understand how he qualified as a— I guess he made the decision at the border and they didn't know about the parents in the United States. Your Honor, I do think the documents indicate that he told them his parents were in Charlotte, North Carolina, and they came to him— I remain confused. What was my law practice? You said, counsel, that the government was relying simply on the fact that they subsequently placed your client into an adult detention facility. They say more than that, though, do they not? They also suggest that that act, when combined with issuing a new I-213, constitutes more than enough to establish an affirmative act. I think that's right. Why isn't that enough? An I-213 is not an action document. It's a report, Your Honor. And if you look at the I-213 they rely on here, it doesn't say anything about termination of any status. It is not inconsistent with the law and their policy for ICE to take in an unaccompanied alien child and not terminate UAC status. We are assuming—the agency is assuming that a sister agency— The new—what are we to make of the fact that the new I-213 did not note that the petitioner was an unaccompanied minor? I think that it wasn't on the radar of ICE, Your Honor. And if it's not on the radar, then it's not on the radar to terminate it. As practitioners, we need this guidance to rely on to advise our clients. And if there's no act of termination, we don't have the predictability to advise our clients. And I will, with that, let my opposing counsel take that. Thank you. Thank you. Good morning. May it please the Court. Chateau Wall for the United States Citizenship and Immigration Services. It's my honor to be here. I've been practicing in Georgia for almost 20 years. It's my first time here. Thank you. The Court has gotten to the heart of the matter. There are several things that have been argued by my colleague here that I would like to just make clear and hopefully be helpful to the Court. First of all, it is not the law, it is not a legal status to be an unaccompanied alien child. This is a factual state of affairs. Under 8 U.S.C. 1158B3C, if a person is unlawfully in the United States under 18 and there was not a parent or legal guardian at the time of apprehension to get to Judge Giustani's question, then that person is identified as a UAC for purposes of placement and other arrangements to be made. There is no immigration benefit tied to this. And under relevant law, it is not the case once a UAC, always a UAC. So to get to the heart of the matter, under 1232, it is not so that once a person is a UAC, that person remains a UAC. There is a statutory heading for minors. And then when that person comes out of HHS custody and goes into adult custody, there's a heading titled Other Aliens. When he was a UAC, he didn't file for asylum, which is how we get into all this thing. But he has a lawyer. And the lawyer goes through the voluntary departure angle instead of seeking asylum. How does he get this lawyer? I don't know, Your Honor. In the record, it states that his parents hired that lawyer, Ms. Oxley. He did eventually at some point make a claim for ineffective assistance of counsel in the Fourth Circuit, fleshed that out and found that he had not established an ineffective assistance of counsel. And you make a very good point, Your Honor. With the assistance of that counsel, he could have filed for asylum with USCIS at any time from 2014 until January 2016. How do these regular UACs who don't actually have parents in the United States, do they get assigned a lawyer? Sure. I mean, that's part. I think. I mean, I think it depends on the circumstances. In this case, Mr. Salmaron. There's a way that people who are in detention as UACs ordinarily get lawyers? I can't speak to every single case, but that is part of getting assigned an attorney is part of a benefit or a right of being a UAC, getting an advocate. In this situation, Mr. Salmaron's family hired Ms. Oxley. And there was a whole proceeding and they found he didn't have ineffective assistance of counsel. Yes, Your Honor. It went to the Fourth Circuit, in fact, that claim did, and the Fourth Circuit found that. But I want to also address a very important, and then we can dispense with this as quickly as the district court did. Mr. Salmaron, to the claims of having an inadequate or an over-inclusive record, if that were true, he was not prejudiced. Under the APA, the record is all things that were considered directly or indirectly with due account to prejudicial error or to prejudice. The district court here considered that argument and made a note that nothing that postdated the jurisdictional notice was considered. The district court found the 2016 I-213 and then the decision as a result of his being classified as an adult to be placed in an adult detention center. The record was not rendered inadequate also by the two revisions. The two revisions, one unredacted a document and the other added some additional pages. These were internal emails and a unredacted document of conference minutes, conference call minutes, internal minutes. Plaintiff's counsel wanted them. However, the agency conducted its due diligence to ensure that not only the district court and Mr. Salmaron had everything that they wanted, needed, or could have considered in order to ensure that there was, in fact, a certified administrative record and that the court did not have to get involved in unnecessary motions practice. Here, there is nothing but diligence on the part of this agency to ensure that there was a proper record. But I also wanted to address that in terms of the 10 documents and the possibility of a concession, there was no concession. The 10 documents established age. This is at the second step of the inquiry, and I can explain further if the court has any questions, but the agency under its policy conducts a two-step inquiry. The first step, which is the heart of this issue, if there is a prior UAC determination made by another agency where that other agency has expended its resources to make this determination, and if that prior determination is intact, USCIS will adopt that determination for jurisdictional purposes  In this case, even though Mr. Salmaron was more than 18 years old, had that not been previously terminated, perhaps his prior UAC determination could have been adopted. But because it had been affirmatively terminated, USCIS went to the next step in the inquiry, and this is where it conducted its independent review of the entire file, and found Mr. Salmaron did not qualify under the statute, under 8 U.S.C. 1158, as a UAC independently. And if it's helpful to the court, I'd like to just explain so that to answer Judge Black's question, it is not in violation of the statute. The policy furthers the statute. It provides a more, as my colleague said, a streamlined approach. It actually provides a better resource for the adjudicators. If another agency has already expended the time, then this adjudicator at CIS does not expend the same resources the same time. In here, we have three agencies at play. In 2014, the CBP, they're all 300 DHS. CBP encountered Mr. Salmaron when he entered the United States, and an incident to that encounter issued an I-213. That I-213 is dated, has the correct date of birth for Mr. Salmaron. And because it indicated that he was under 18, noted that he was a UAC for purposes of placement processing, and he was placed with his parents, and he was placed in full removal proceedings because he was a UAC, and a notice to appear was issued. Fast forward. In 2016, he's almost 19 years old at this point. He did not voluntarily depart. ICE encounters him again, this time to arrest him. Incident to that, they issue another I-213. As a result of that classification, he's put into another detention facility, or into a detention facility, this time as an adult. It's an adult detention facility. That's the second act. The third time an agency gets involved is CIS, because Mr. Salmaron, for the first time, files an asylum application, and this is where the jurisdiction comes in. Let me ask you a question about placing him in an adult detention facility. Yes, Your Honor. Could ICE place a minor in an adult facility? Not if it's a UAC. There are minors who are accompanied that might go into like a family. But the only way a minor could go into an adult facility would be with a parent or a guardian. Is that right? Who has – I don't want to answer this question improperly. Well, you understand why I asked the question. Your colleague suggests that this wouldn't constitute an affirmative act because there are multiple circumstances under which a minor could be placed in an adult facility. I understood you to say, no, the only circumstance would be if the minor was accompanied by a parent or a guardian. Am I wrong? Is there something beyond that? Just a point of clarification, and then you are correct. A UAC would not be placed into – Right, because they're unaccompanied. Yes, so a minor would never – The answer is an unaccompanied child can never be placed in an adult facility. Well, and a minor would never be placed into an adult detention facility. Unless they were accompanied by a parent. No, Your Honor. A minor would never be – I'm sorry. I thought you were asking an ICE facility. So, no, a minor would never be placed into an adult detention facility knowingly. My colleague and I actually have other cases where age is a disputed issue. But to clarify, a known minor would never be placed into an adult detention facility. There are family facilities where adults perhaps are together with minors. So, yes, an unaccompanied minor would never be placed with adults. Is part of this case moot or all of it? The habeas petition, part of it is moot. Mr. Salmon was removed in November of 2016, and there is nothing for this court to grant relief. Because he didn't – because we – let's see. He's not in detention, and there's no challenge to the removal order, right? Yes, Your Honor. So that makes the habeas moot. Yes. He didn't ask in his habeas petition to be brought to the interview, which is what he's asking now on appeal. Essentially, he's asking to amend his habeas petition that if there's some relief granted, he's conjecturing that he won't be able to attend an asylum interview, and he needs to amend his habeas petition at this juncture. So all we have is the challenge to the decision of the agency. The jurisdictional decision. Right. And I would like to clarify that the policy was followed, and it's under that policy that the jurisdictional notice is valid. And I have a lot more to say. If there's any questions, I can keep going. But I think we are clear at this juncture that the jurisdictional notice on its face rationally connected the facts that were found with the conclusion that was made, and there is no arbitrary and capricious decision here. And we ask that this court affirm the district court's decision. Thank you, Ms. Moore. Thank you. For short points, unaccompanied alien children don't get lawyers. If they're in removal proceedings, they don't get lawyers. There's no program, statute, regulation that provides them counsel at the expense of the government. Just not out there. Can a minor be placed in an adult facility without a parent? Yes, Your Honor. Under what circumstances? They can hold them for up to 72 hours. They can segregate before they transfer them to ORR, Office of Refugee Resettlement. They can segregate a minor, an unaccompanied alien child, inside of an adult detention center, but outside of the presence of unrelated adults. So an unaccompanied child can be placed in an adult facility? Yes, Your Honor. It happens all the time. You'll note that the records in here note that Mr. Salmarone, after he was picked up in Charlotte, along with five of his other colleagues with no criminal history, were taken to York, South Carolina. York, South Carolina, they would call an adult detention center, but that's just a stop along the way to a more permanent facility. And so our concern here is that if this Court affirms and finds that it's an affirmative act to place an UAC at any adult detention center anywhere along the way, that making the trip from Nogales, Arizona, that Mr. Salmarone made, all the way to Charlotte, North Carolina, if he is stopped in, say, Osceola County, also down in the middle district of Georgia, that's an adult detention center, completely lawful to keep him there for one night, two nights, while they're transporting him, and that would be an affirmative act that years later, when his immigration petitioner, who he has to hire, goes to try to apply for asylum at CIS, they may now say, nope, your UAC status was affirmatively terminated by ICE because they placed you there for one night. The second point, Your Honor, the record issue. It's very important to discern the different sub-agencies of DHS here. We have Customs and Border Protection, we have Citizenship and Immigration Services, and we have Immigration and Customs Enforcement. They all have their own set of documents that they rely on. They have their own individual records. What was presented to the Court in this case was all of that together in one big pile. We don't know what Citizenship and Immigration Services looked at, and therefore the Court cannot engage in effective judicial review under the APA. Third, we don't get past the first step in this case, Your Honor. The government wants to argue at the second step. Their policy memo says if a sister agency has determined that the applicant was a UAC, UAC status was still in place, USCIS will take initial jurisdiction over the case even if there appears to be evidence that the applicant may have turned 18 or may have reunited with a parent. They recognize a situation like this, and they say we're not looking beyond that. I take it there's no dispute about age here. There's not, Your Honor. No, sir. But there is a dispute that whether the agency ever terminated his UAC status. And I actually don't think it's a dispute because nowhere in the record have they actually done that. And for that reason, Your Honor, we would ask that this Court reverse the district court and send us back down to Judge Hiles. Thank you, Your Honor. Thank you much.